## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RICHARD FIELDS** | : **CIVIL ACTION** |
| | : |
| v. | : |
| | : **NO: 14-4424** |
| **CITY OF PHILADELPHIA, et al** | : |
| | |
| **AMANDA GERACI** | : **CIVIL ACTION** |
| | : |
| v. | : |
| | : **NO: 14-5264** |
| **CITY OF PHILADELPHIA, et al** | : |

**KEARNEY, J.**                                                      **February 19, 2016**

## MEMORANDUM

In two incidents a year apart, Philadelphia police officers possibly violated the Fourth Amendment when encountering citizens either before or after the citizens captured police conduct on film. The citizens never told the police why they were capturing images of the police interacting with people they did not know. They were watching their police officers in action and wanted to capture the images because, at least for one of the citizens, "[i]t was an interesting scene. It would make a good picture" and for the other because she is a legal observer trained to observe the police. The question today is whether citizens also enjoy a First Amendment right to photograph police absent any criticism or challenge to police conduct. The citizens urge us to find, for the first time in this Circuit, photographing police without any challenge or criticism is expressive conduct protected by the First Amendment. While we instinctively understand the citizens' argument, particularly with rapidly developing instant image sharing technology, we find no basis to craft a new First Amendment right based solely on "observing and recording" without expressive conduct and, consistent with the teachings of the Supreme Court and our Court of Appeals, decline to do so today.

We begin by reminding the parties we are not addressing whether the officers' conduct violated the Fourth Amendment which awaits the jury's credibility evaluation. We are also not addressing a First Amendment right to photograph or film police when citizens challenge police conduct. We focus only on the facts in this case. Our analysis must temporally separate the police's taking of a cell phone, arresting the citizen or applying excessive force. While courts applying the Fourth Amendment have long held police may not seize phones or arrest citizens without probable cause and cannot use excessive force, this case asks us only to study one snapshot in time through the lens of the First Amendment only: whether photographing or filming police on our portable devices without challenging police is expressive conduct protected by the First Amendment.

*Richard Fields' conduct*

On September 13, 2013, Temple University student Richard Fields ("Fields") stopped walking on the Broad Street sidewalk to use his cell phone to photograph approximately twenty (20) police officers standing outside a home hosting a party.[1] He thought "what a scene, and … took a picture from the other side of the street."[2] "It was an interesting scene. It would make a good picture…"[3] "I just thought that would make a great picture…. It was pretty cool, it was like a mob of them, so I was, like, just take a picture."[4] He did not say a word to anyone.[5] Fields does not claim taking another picture.

Officer Sisca approached him after he took the picture.[6] Fields alleges Officer Sisca questioned him, "[d]o you like taking pictures of grown men?" Fields answered "No, I'm just walking by." Officer Sisca asked him to leave. Fields refused to leave "[b]ecause I felt that I was doing nothing wrong. I was perfectly acting within my rights just standing on the sidewalk, taking a picture of public property."[7] Fields "was about 15 feet away from any police officer."[8]

2

After Fields refused to leave, Officer Sisca detained him, handcuffed him, emptied his pockets, took his cell phone and searched his phone.[9] Officer Sisca did not delete the photo. Officer Sisca placed Fields in a police van while he cited Fields for Obstructing Highway and Other Public Passages under 18 Pa.C.S.§5507. After citing him, Officer Sisca returned the cell phone and released Fields from custody.[10] Officer Sisca did not appear for the court hearing on the citation.

Fields seeks damages under 42 U.S.C. §1983 against Officer Sisca alleging retaliation for exercising a First Amendment right to "observe and record" police, and for violating his Fourth Amendment rights against unreasonable search and seizure, and false arrest. Fields also seeks damages under §1983 for malicious prosecution. These facts, taken in the light most favorable to Fields, could result in Fourth Amendment liability arising from Officer Sisca's possibly inexplicable statement and conduct. But the question today is whether the First Amendment protects Fields from police retaliating against him for photographing them without criticizing or challenging police before or contemporaneous with the photo.

## Amanda Geraci's conduct

Amanda Geraci ("Geraci") is a self-described "legal observer" who, following training at Cop Watch Berkley, observes interaction between police and civilians during civil disobedience or protests.[11] She claims to wear a pink identifier.[12] While she thinks the police know who she is, she is not a liaison with the police.[13] Before 6:45 A.M. on September 21, 2012, Geraci attended a public protest against hydraulic fracturing near the Pennsylvania Convention Center in Philadelphia, and carried a camera with her to videotape the scene.[14] She described the people as "excited. They were dancing, they were playing music. Relatively chill, I guess."[15]

3

Approximately six to ten civil affairs officers attended to manage crowd control and ensure convention guests could enter the Convention Center.[16]

During the protest, Philadelphia police arrested one of the protestors.[17] Geraci moved closer to get a better view and hoped to videotape the incident.[18] Geraci claims Officer Brown "attacked her" by physically restraining her against a pillar and preventing her from videotaping the arrest.[19] Geraci recalls this as being her only physical interaction with the police despite having attended at least twenty (20) similar events.[20] The police released Geraci and did not arrest or cite her.[21] Geraci could not remember any other police officers around her.[22] Geraci recalls telling Officer Brown "things like I'm not doing anything wrong. I was just legal observing. I don't remember much. It's very blurry. Like it was really kind of shocking."[23]

Geraci seeks damages under 42 U.S.C. §1983 for First Amendment retaliation against Officer Brown and the City of Philadelphia and claims her peaceful attempt to observe and record police amounts to an exercise of a First Amendment right. Geraci also seeks damages under §1983 against Officer Brown and three fellow officers, Defendants Barrow, Jones and Smith, for violating her Fourth Amendment right to be free from excessive force when she tried to get a better view of the police arrest. Although Geraci does not claim Officers Barrow, Jones or Smith had any physical contact with her and she cannot testify they were ever near her, she seeks recovery against them because they failed to intervene in Officer Brown's alleged use of excessive force.

## I.     ANALYSIS OF FIRST AMENDMENT RETALIATION CLAIM

Fields and Geraci filed separate actions under 42 U.S.C. §1983 seeking damages for constitutional injuries inflicted by individual Philadelphia police officers and their employer City of Philadelphia.[24]

While the officers seek dismissal of the First Amendment retaliation claim based on qualified immunity, and the City based on lack of supervisory liability under *Monell v. Dep't of Soc. Servs. of City of New York*[25], we focus on the threshold issue: whether Fields or Geraci engaged in First Amendment protected conduct. We find there is no First Amendment right under our governing law to observe and record police officers absent some other expressive conduct. As we find Fields and Geraci did not engage in constitutionally protected conduct, we do not address the potentially liable parties and their defenses.

We first analyze the facts of expressive conduct adduced by Fields and Geraci under the customary analysis and then address Fields' and Geraci's argument we should expand our understanding of expressive conduct to include taking, or attempting to take, a photograph.

## A. Fields and Geraci offer no factual basis for customary expressive conduct required for a First Amendment retaliation claim.

To prevail on their First Amendment retaliation claim, Fields and Geraci must prove "(1) each engaged in constitutionally protected conduct; (2) defendant officials took adverse action sufficient to deter a person of ordinary firmness from exercising constitutional rights; and (3) the constitutionally protected conduct was a 'substantial or motivating factor' in the decision to take adverse action against the plaintiff." [26]

Fields' and Geraci's alleged "constitutionally protected conduct" consists of observing and photographing, or making a record of, police activity in a public forum.[27] Neither uttered any words to the effect he or she sought to take pictures to oppose police activity. Their particular behavior is only afforded First Amendment protection if we construe it as expressive conduct.[28] Because we find this issue dispositive on all of Plaintiffs' First Amendment retaliation claims, we first address whether Fields' and Geraci's conduct is constitutionally protected activity under prevailing precedent.

5

We analyze Fields' and Geraci's conduct mindful of the Supreme Court's admonition "[w]e cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' ...."[29] "[I]t is the obligation of the person desiring to engage in assertedly expressive conduct to demonstrate that the First Amendment even applies."[30] "Expressive conduct exists where 'an intent to convey a particularized message was present, and the likelihood was great that the message would be understood by those who viewed it.'"[31] "[T]his is a fact-sensitive, context-dependent inquiry, and ... the putative speaker bears the burden of proving that his or her conduct is expressive." [32]

As the Supreme Court explained in *Texas v. Johnson,* we recognize expressive conduct in the areas of picketing, armband-wearing, flag-waving and flag-burning.[33] "Conduct is protected by the First Amendment when the 'nature of [the] activity, combined with the factual context and environment in which it was undertaken', shows that the 'activity was sufficiently imbued with elements of communication to fall within the First Amendment's scope.'"[34] In addition, "context is crucial to evaluating an expressive conduct claim because 'the context may give meaning to the symbol' or act in question."[35] The conduct must be direct and expressive; we cannot be left guessing as to the "expression" intended by the conduct.

Applying this standard, we conclude Fields and Geraci cannot meet the burden of demonstrating their taking, or attempting to take, pictures with no further comments or conduct is "sufficiently imbued with elements of communication" to be deemed expressive conduct. Neither Fields nor Geraci direct us to facts showing at the time they took or wanted to take pictures, they asserted anything to anyone. There is also no evidence any of the officers *understood* them as communicating any idea or message.

As in *Troster* and *Tenafly*, we find Fields and Geraci offered nothing more than a "bare assertion" of expressive conduct. Because this bare assertion falls short of their burden of proof following discovery, Fields and Geraci cannot proceed on a First Amendment retaliation claim under our customary analysis.

## B. Expanding "expressive conduct" to include "observing and recording."

Fields and Geraci essentially concede they spoke no words or conduct expressing criticism of the police before or during their image capture. They instead want to persuade us "observing" and "recording" police activity is expressive conduct entitled to First Amendment protection as a matter of law. In their view, observing is a component of "criticizing" and citizens may engage in speech critical of the government. We find no controlling authority compelling this broad a reading of First Amendment precedent.

### a. Guidance in the Third Circuit.

Our Court of Appeals recognizes "videotaping or photographing the police in the performance of their duties on public property *may* be a protected activity. "[36] Quoting *Gilles v. Davis*, our Court of Appeals in *Kelly v. Borough of Carlisle* stated, "more generally, photography or videography that has a communicative or expressive purpose enjoys some First Amendment protection."[37] While acknowledging activities observing and recording the police *may* be protected, our Court of Appeals has never held speech unaccompanied by an expressive component is always afforded First Amendment protection.[38] The Court of Appeals for the Third Circuit's pronouncement in *Kelly*, stating videotaping police officers *may* be protected activity, together with our reading of these district court cases, compels us to apply a similar traditional First Amendment analysis when assessing whether speech or conduct may be afforded

7

constitutional protection, inquiring whether the activity is "expressive" or otherwise "critical" of the government.

Our Court of Appeals discussed the purported "right" to videotape officers most recently in its non-precedential opinion in *True Blue Auctions v. Foster*,[39] where plaintiff videotaped a private auction and police ordered him to remove an auction sign. Plaintiff claimed the police violated his First Amendment rights because they "threatened to arrest" him if he continued to videotape them. Our Court of Appeals affirmed the district court's order granting officers' qualified immunity because at the time of the alleged incident there was "no clearly established constitutional right to videotape the officers without threat of arrest."[40] In 2013, the court of appeals recognized "our case law does not clearly establish a right to videotape police officers performing their official duties."[41] No Third Circuit case since *True Blue Auctions* holds there is a blanket First Amendment right to videotape or photograph officers.

Following *Kelly v. Borough of Carlisle*, several district courts in this circuit similarly contemplate a constitutional right to observe and record *may* exist in certain circumstances, but none has so held when there is an absence of protest or criticism. Judge Dalzell in *Fleck v. Trustees of Univ. of Pennsylvania* granted summary judgment to defendant officers on plaintiffs' claim officers violated their First Amendment rights when seizing a video camera after plaintiffs allegedly refused to shift the camera away from officers' faces after being ordered to do so.[42] Judge Dalzell acknowledged "the right to record matters of public concern is not absolute" and consistent with *True Blue* confirmed, albeit in the context of qualified immunity, "our case law does not clearly establish a right to videotape police officers performing their official duties."

Judge McHugh in *Gaymon v. Borough of Collingdale*[43] rejected qualified immunity where plaintiff videotaped police while verbally protesting police harassing her husband during

8

an arrest. "It is indisputable that 'the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers.' In fact, the Supreme Court has gone so far as to say that 'the freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state.'" [44]

Fields and Geraci direct us to Judge Bartle's holding in *Robinson v. Fetterman* [45] and Judge Yohn's holding in *Montgomery v. Killingsworth* [46] to argue the right to observe and record is protected by our First Amendment regardless of context. We find no inherent conflict between these cases and our decision today.

In *Robinson*, plaintiff expressed displeasure with the police's method of inspecting trucks on a highway. He contacted his state representative to express his opinion, and inquire about his rights to videotape. By all accounts, Robinson's activities were expressive from the start. On two occasions, police officers approached and investigated Robinson. Videotaping in conjunction with an intent to chronicle or criticize the alleged unsafe manner in which officers inspected trucks on a state roadway is "speech" critical of the government, as Judge Bartle concluded in that case. Based on the particular facts gleaned during the bench trial in *Robinson*, Judge Bartle entered judgment for the plaintiff on his First Amendment retaliation claim, holding an individual observing and videotaping for the stated purpose of challenging or protesting police conduct is expressive conduct entitled to First Amendment protection. [47]

Judge Yohn's cogent and exhaustive analysis in *Montgomery v. Killingsworth* applies a similar test for assessing conduct protected by the First Amendment. [48] As Judge Yohn observed last year, "Peaceful criticism of a police officer performing his duties in a public place is a protected activity under the First Amendment." [49]   Judge   Yohn   noted,   "this   protection,

9

however, is not absolute."[50]  Quoting the Supreme Court in *Colten v. Kentucky*,[51] and as it relates to Fields, Judge Yohn found "conduct in refusing to move on after being directed to do so was not, without more, protected by the First Amendment."[52]

Because Fields and Geraci do not adduce evidence their conduct may be construed as expression of a belief or criticism of police activity, under governing Supreme Court or Third Circuit precedent we do not find they exercised a constitutionally protected right for which they suffered retaliation.  This is fatal to their First Amendment retaliation claim.[53]  We find the citizens videotaping and picture-taking in *Montgomery, Gaymon, Fleck* and even *Robinson* all contained some element of expressive conduct or criticism of police officers and are patently distinguishable from Fields' and Geraci's activities.

Each situation remains subject to analysis based on the unique set of facts presented. Police officers remain limited by the Fourth Amendment proscriptions including false arrest, unreasonable search and excessive force in all situations, including those involving videotaping and photography.

#### b.  Guidance from other authorities.

We recognize courts outside the Third Circuit and at least one noted commentator have found observing and photographing police activity without any criticism of the government fall within the realm of First Amendment protected activity.  While we understand these opinions, the present law in this Circuit does not recognize a First Amendment right to observe and record without some form of expressive conduct and photographing police is not, as a matter of law, expressive activity.

Several circuits analyzing this identical issue have interpreted activities involving citizens observing and recording police more broadly.  In *Smith v. City of Cumming*[54], the Eleventh Circuit found citizens had a First Amendment right, subject to reasonable time, manner and place

restrictions, to photograph or videotape police, because in their view "the First Amendment protects the right to gather information about what public officials do on public property."[55] Drawing an analogy to the line of cases permitting journalists a First Amendment right to access information for news gathering, and relating a paramount First Amendment interest in promoting free discussion of governmental affairs and to prevent corruption, the Courts of Appeals for the First Circuit and Ninth Circuit have similarly held citizens photographing or observing official conduct is merely information gathering, similar to protections afforded to news sources, which is a necessary step in the process of expressing a right to criticize or challenge government behavior.[56]

Most recently, in *Garcia v. Montgomery County, Maryland*,[57] the district court held a photojournalist had "a constitutional right to video record public police activity" but ultimately concluded the right was not clearly established at the time of the incident and found the officers entitled to qualified immunity  Interpreting the First Amendment in a broad manner, the court reasoned,

> [R]ecording governmental activity, even if that activity is not immediately newsworthy, has the potential to prevent government abuses through scrutiny or to capture those abuses should they occur.  As [plaintiff] stated, recording police activity enables citizens to 'keep them honest,' an undertaking protected by the First Amendment.[58]

We also recognize commentary suggesting image capture before the decision to transmit the image is, as a matter of law, expressive conduct.[59]  While we appreciate Professor Kreimer's analysis as it relates to shared images, or an intent to share images, Fields and Geraci do not suggest they intended to share their images immediately upon image capture.   Geraci wanted to observe only and Fields took a picture of an "interesting" and "cool" scene.

We find these authorities are inapposite.  We need not apply a qualified immunity standard as we do not find a right *ab initio*.[60]  Neither Fields nor Geraci assert they engaged in conduct "critical" of the government; both assert they were only "observing" police activity.  They are not members of the press.  Each engaged in activity they personally described as non-confrontational "observing" and "recording."  Unlike the situation contemplated by *Kelly* involving critical or expressive conduct, there is no dispute Geraci attended the protest against fracking intending to "observe" any interaction between the crowd and police.  We do not find Geraci's attempt to get a better look and possibly film protected speech the same as expressing or criticizing police conduct.  Geraci may have filmed a peaceful arrest of an otherwise unruly protester.  We do not find this conduct "expressive" simply because she attempted to film police activity.  We reach a similar conclusion as to Fields.  Fields does not allege he engaged in speech or expressive conduct critical of the police.  Fields claims he was walking down the street and stopped to take a picture of something interesting to him.

There is no contrary authority by the Supreme Court or our Court of Appeals holding a citizen observing or recording police without criticism or challenge is engaging in the expressive conduct necessary for First Amendment protection.  As such, summary judgment will be granted Defendants on Fields' and Geraci's First Amendment retaliation claims.

## III. ANALYSIS OF FOURTH AMENDMENT CLAIMS

We find sufficient evidence to deny summary judgment on the excessive force and false arrest/imprisonment claims against the officers but grant summary judgment on Fields' claim for malicious prosecution. [61]

12

## A. Fields' claims against Sisca for false arrest and unreasonable search will proceed to trial.

Fields claims Officer Sisca, in violation of the Fourth Amendment, conducted an unlawful search which caused him to suffer injury.[62] Officer Sisca contends there is no evidence to support Fields' claim anyone searched his phone, and summary judgment is warranted on the Fields' claim.[63] If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.[64]

We must consider Plaintiff's evidence and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party.[65] Fields' testimony constitutes sufficient evidence from which a jury could find in his favor. It is not our role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations.[66] The disputed evidence must be resolved by a jury.

## B. We grant summary judgment on Fields' malicious prosecution claim.

Defendants seek summary judgment on Fields' malicious prosecution claim. A constitutional claim for malicious prosecution stems from the Fourth Amendment and is "intended to redress [ ] the deprivation of liberty accompanying prosecution, not prosecution itself."[67] To prevail on a malicious prosecution claim under §1983, Fields must show (1) the officers initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) officers initiated the proceeding without probable cause; (4) officers acted maliciously or for a purpose other than bringing Fields to justice; and, (5) the officers deprived Fields of liberty consistent with the concept of seizure as a consequence of a legal proceeding.[68] Where plaintiff fails to proffer evidence on any one of the five prongs, the malicious prosecution claim fails as a matter of law.[69] The parties dispute the last element.

13

The last element of a malicious prosecution claim requires Fields show "some deprivation of liberty consistent with the concept of 'seizure'" as a consequence of a legal proceeding.[70] Where the alleged deprivation of liberty is not "as a consequence of a legal proceeding" it cannot give rise to a malicious prosecution claim.[71]

Fields has no evidence Defendants deprived him of a liberty *as a consequence* of a legal proceeding."[72] The facts show Officer Sisca detained Fields, placing him in the police van for a period of time *before* issuing a citation. Where arrest and custody occurred prior to initiation of legal proceedings, the arrest "cannot be said to have been a seizure as a consequence of the alleged malicious prosecution."[73] We deny summary judgment on Geraci's excessive force claim.

## C. Geraci may proceed to trial on her excessive force claim.

Geraci claims Officers Brown, Barrow, Jones and Smith violated her Fourth Amendment right to be free from excessive force.[74] Defendants Barrow, Jones and Smith each move for summary judgment arguing there is no evidence of physical contact with Geraci.[75]

To establish a claim for excessive force under the Fourth Amendment, Geraci must show that a "seizure" occurred and it was unreasonable.[76] A seizure occurs when police restrain a citizen through physical force or show of authority, and occurs only when a reasonable person would have believed she was not free to leave a situation.[77]

Barrow, Jones and Smith did not physically contact Geraci. The question is whether they should have intervened. Police officers have a duty to protect a victim from another officer's use of excessive force if there is a reasonable and realistic opportunity to intervene.[78] An officer is only liable for failing to intervene if Geraci can show: (1) another officer violated her constitutional rights; (2) the officer had a reason to believe that his colleague was committing a

constitutional violation; and (3) he had a reasonable and realistic opportunity to intervene.[79] Officers only have an opportunity to intervene when excessive force is used in the officer's presence or if the officer saw his colleague use excessive force and had time to intervene.[80]

Geraci adduced evidence, through pictures, of officers near the scene. She adduced the officers' admission they witnessed Officer Brown's conduct toward her.[81] We cannot make factual findings as to whether these officers knew of the extent of Officer Brown's conduct towards Geraci and had a reasonable and realistic opportunity to intervene.

Viewing the adduced evidence in her favor as we must at this stage, Geraci directs us to sufficient facts from which a jury could conclude Officers Barrow, Smith and Jones failed to intervene in Officer Brown's alleged use of excessive force.

## IV. CONCLUSION

We have not found, and the experienced counsel have not cited, any case in the Supreme Court or this Circuit finding citizens have a First Amendment right to record police conduct without any stated purpose of being critical of the government. Absent any authority from the Supreme Court or our Court of Appeals, we decline to create a new First Amendment right for citizens to photograph officers when they have no expressive purpose such as challenging police actions. The citizens are not without remedy because once the police officer takes your phone, alters your technology, arrests you or applies excessive force, we proceed to trial on the Fourth Amendment claims.

We also find Fields and Geraci adduced competent evidence precluding summary judgment under the Fourth Amendment challenging Officer Sisca's arrest and search and seizure of Fields' cell phone and for the officers' excessive force upon Geraci. Fields did not adduce evidence to sustain a malicious prosecution claim. At oral argument, Plaintiffs conceded a lack of supervisory liability against the City for their arrest, search, seizure and excessive force

15

claims. In the accompanying Order, we partially grant the Defendants' motion for summary judgment and trial will proceed on: Fields' claims for unreasonable search and false arrest against Officer Sisca and Geraci's claim for excessive force against the four officers.

---

[1] The Court's Policies require a Statement of Undisputed Material Facts ("SOF") and Appendix ("App.") filed in support of a summary judgment motion. SOF ¶28-29.

[2] App. 32

[3] App. 56

[4] App. 35

[5] App. 36

[6] App. 37

[7] *Id.*

[8] App. 33

[9] App. 41

[10] SOF ¶34.

[11] SOF ¶35.

[12] App. 9

[13] *Id.*

[14] SOF ¶36-37; Compl. ¶12.

[15] App. 9

[16] App. 539, 719-20, 844, 910

[17] SOF ¶38.

[18] SOF ¶40-41, App. 32-33.

[19] SOF ¶45; Compl. ¶34-35.

[20] SOF ¶44; App. 9

[21] SOF ¶45; Compl. ¶¶44, 49.

[22] App. 11

[23] App. 12

[24] At the parties' request we consolidated the cases for discovery, dispositive motions and possibly trial.

[25] *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 659 (1978).

[26] *Rauser v. Horn,* 241 F.3d 330, 333–334 (3d Cir.2001) (quoting *Mount Healthy Bd. of Ed. v. Doyle,* 429 U.S. 274 (1977)); *Thomas v. Independence Twp.,* 463 F.3d 285, 296 (3d Cir.2006).

[27] Neither Fields nor Geraci allege or offer evidence their conduct expressed criticism of police activity; each maintain the mere act of observing and recording is entitled to First Amendment protection. The act of "observing and recording," Plaintiffs contend, is a fundamental constitutional right protected by the First Amendment.

[28] *Heffernan v. City of Paterson*, 777 F.3d 147, 152 (3d Cir. 2015) (speech need not be a message communicated verbally because "expressive conduct is protected under the First Amendment.") *cert. granted,* -- U.S. --, 136 S. Ct. 29 (2015).

[29] *United States v. O'Brien*, 391 U.S. 367, 376 (1968); *see also Texas v. Johnson*, 491 U.S. 397, 404 (1989); *Spence v. Washington*, 418 U.S. 405, 409 (1974).

[30] *Tenafly Eruv Ass'n, Inc. v. Borough of Tenafly*, 309 F.3d 144, 161 (3d Cir. 2002) (citing *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293, n.5 (1984)).

[31] *Heffernan, supra* at 152 (quoting *Texas v. Johnson,* 491 U.S. at 404).

[32] *Id.* (quoting *Tenafly*, 309 F.3d at 161).

[33] *Johnson*, 491 U.S. at 404.

[34] *Tenafly*, 309 F.3d at 158 (quoting *Spence v. Washington*, 418 U.S. at 409-10); *Troster v. Pa.State Dept. of Corrections*, 65 F.3d 1086, 1090 (3d Cir. 1995)).

[35] *Id.*

[36] *Kelly v. Borough of Carlisle*, 622 F.3d 248, 260 (3d Cir. 2010) (quoting *Gilles v. Davis*, 427 F.3d 197, 204 n.14 (3d Cir. 2005) (citing *Smith v. City of Cumming*, 212 F.3d 1332, 1333 (11th Cir. 2000)).

[37] *Id.*

[38] These opinions discuss constitutional rights in the context of evaluating qualified immunity to police officers. *Kelly, supra,* 622 F.3d at 260 ("we have not addressed directly the right to videotape police officers"); *Gilles* 427 F.3d at 221, n. 14 ("videotaping or photographing the police in the performance of their duties on public property may be a protected activity...photography or videography that has a communicative or expressive purpose enjoys some First Amendment protection."); *Whiteland Woods v. Township of W.Whiteland*, 193 F.3d 177, 183 (3d Cir. 1999)("[Plaintiff] does not allege [defendant] interfered with its speech and other expressive activity. Rather, the alleged constitutional violation consisted of a restriction on [plaintiff's] right to receive and record information."). *See also Snyder v. Daugherty*, 899 F.Supp.2d 391, 413-14 (W.D.Pa. 2012)("There is no clearly established, 'unfettered' constitutional right, in generalized terms, under the First, Fourth, or any other Amendment, to record police officers in the performance of their duties."); *Pomykacz v. Borough of West Wildwood*, 438 F.Supp.2d 504, 513, n. 14 (D.N.J. 2006)("An argument can be made that the act of photographing, in the abstract, is not sufficiently expressive or communicative and therefore not within the scope of First Amendment protection – even when the subject of the photography is a public servant.").

[39] *True Blue Auctions v. Foster,* 528 F. App'x 190 (3d Cir. 2013).

[40] *Id.* at 192.

[41] *Id.* at 193.

[42] *Fleck v. Trustees of Univ. of Pennsylvania*, 995 F. Supp. 2d 390, 403 (E.D. Pa. 2014)

[43] *Gaymon v. Borough of Collingdale* , No. 14-5454, 2015 WL 4389585 (E.D. Pa. July 17, 2015)

[44] *Id.* (quoting *City of Houston, Texas v. Hill*, 482 U.S. 451, 461 (1987))(internal citations omitted).

[45] *Robinson v. Fetterman*, 378 F. Supp. 2d 534 (E.D. Pa. 2005).

[46] *Montgomery v. Killingsworth*, No. 13-256, 2015 WL 289934 (E.D. Pa. Jan. 22, 2015).

[47] *Robinson*, 378 F. Supp. 2d at 541.

[48] In *Montgomery v. Killingsworth*, Judge Yohn analyzed these consolidated cases under a qualified immunity rubric and ultimately found no "clearly established" right to observe and record police, leaving the question to be resolved and decided by the court of appeals. In line with the guidance from the Third Circuit, these cases held plaintiffs' expressive conduct does fall within these protections, but activity not deemed 'expressive' probably did not. Ultimately, the court did not have to decide whether the expressive conduct *was* constitutionally protected because defendants, all individual officers, were given qualified immunity. The City of Philadelphia was dismissed by stipulation of the parties.

[49] *Montgomery, supra* at *6 (citing *City of Houston*).

[50] *Id.* at *7 (citing *Chaplinsky v. State of New Hampshire*, 315 U.S. 568, 572 (1942)).

[51] *Colten v. Kentucky*, 407 U.S. 104, 107 (1972).

[52] *Montgomery, supra* at *7.

[53] *See e.g. Damiano v. Scranton Sch. Dist.,* No. 13-2635, 2015 WL 5785827, at *14 (M.D. Pa. Sept. 30, 2015)(summary judgment warranted where plaintiffs did not allege or produce facts to support a claim they engaged in First Amendment protected conduct).

[54] *Smith v. Cunning*, 212 F.3d 1332, 1333 (11th Cir.2000)

[55] *Id.* at 1333.

[56] *Glik v. Cunniffe,* 655 F.3d 78 (1st Cir.2011); *Fordyce v. City of Seattle,* 55 F.3d 436, 439 (9th Cir.1995). In *Glik*, the plaintiff expressed concern police were using excessive force arresting a young man in a public park and began recording the arrest on his cell phone and the police then arrested plaintiff. Affirming the district court and rejecting officers' claim of qualified immunity, the court of appeals held qualified immunity did not apply to officers because it was clearly established, "gathering information about government officials in a form that can readily be disseminated to others serves a cardinal First Amendment interest in protecting and promoting 'the free discussion of governmental affairs.'" *Id.* at 82 (citing *Mills v. Alabama*, 384 U.S.214 (1966)). In *Fordyce*, the court mentioned a "First Amendment right to film matters of public interest," although the right was not clearly established for purposes of qualified immunity because state privacy laws prohibiting electronic recording without permission did not clearly impact these rights. Notably, the plaintiff in *Fordyce* claimed he was recording a public protest for a local news station. Recently, in *Adkins v. Limtiaco*, the court of appeals found a clearly established constitutional right to photograph the scene of an accident during a police investigation. 537 F. App'x 721 (9th Cir. 2013) (citing *City of Houston v. Hill,* 482 U.S. 451, 461 (1987)).

[57] *Garcia v. Montgomery County, Maryland*, No. 12-3592, 2015 WL 6773715 (D.Md. Nov. 5, 2015).

[58] *Id.* at *8.

[59] Seth F. Kreimer, *"Pervasive Image Capture and the First Amendment: Memory, Discourse, and the Right to Record,"* 159 U.Pa.L.Rev. 335, 377 (2011).

[60] As our Court of Appeals noted today in reviewing qualified immunity, we must initially ask "[w]hat is the right here?" *Mammaro v. New Jersey Div. of Child Prot. and Permanency,* No. 15-1448, slip op. at 9 (3d Cir. Feb. 19, 2016)

[61] Fields' and Geraci's counsel withdrew any Fourth Amendment supervisory liability claim during oral argument. Accordingly, we do not consider whether the City may be liable for failure to train and/or supervise officers in responding to incidents where citizens observed, recorded or photographed them in a manner violating the Fourth Amendment.

[62] Fields also claims Officer Sisca violated his Fourth Amendment right to be free from arrest and imprisonment without probable cause. Officer Sisca concedes there are disputed facts for the jury to resolve and does not seek summary judgment on these claims.

[63] A party may meet its summary judgment burden by "pointing out... there is an absence of evidence to support the nonmoving party's claims." *Cichonke v. Bristol Twp.*, No. 14-4243, 2015 WL 8764744, at *8 (E.D. Pa. Dec. 14, 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[64] *Celotex*, 477 U.S. at 322.

[65] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987).

[66] *Boyle v. Cty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Petruzzi's IGA Supermkts., Inc. v. Darling-Del. Co. Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993)).

[67] *White v. Glenn*, No. 13-984, 2014 WL 5431200, at *2 (E.D. Pa. Oct. 27, 2014) (citing *DiBella v. Borough of Beachwood,* 407 F.3d 599, 603 (3d Cir.2005)).

[68] *Johnson v. Knorr,* 477 F.3d 75, 81–82 (3d Cir.2007); *Blythe v. Scanlan*, No. 14-7268, 2015 WL 4743786, at *3 (E.D. Pa. Aug. 11, 2015); *see also Estate of Smith v. Marasco,* 318 F.3d 497, 521 (3d Cir. 2003).

[69] *Domenech v. City of Phila.,* No. 06–1325, 2009 WL 1109316, at *9 (E.D.Pa. Apr.23, 2009), *aff'd,* 373 F. App'x 254 (3d Cir.2010).

[70] *Gallo v. City of Phila.,* 161 F.3d 217, 222 (3d Cir.1998), *as amended,* (Dec. 7, 1998).

[71] *White, supra* at *2 (no deprivation of liberty consistent with seizure in violation of Fourth Amendment where only in custody prior to initiation of legal proceedings).

[72] *Johnson,* 477 F.3d at 81–82 (emphasis added); *see also Gallo,* 161 F.3d at 222.

[73] *White, supra* at *3-4; *see also Lopez v. Maczko,* No. 07–1382, 2007 WL 2461709, at *3 (E.D.Pa. Aug. 16, 2007) (no facts supporting seizure as a consequence of legal proceeding where only seizure alleged is arrest which occurred prior to initiation of criminal proceedings); *Luck v. Mount Airy No. 1, LLC,* 901 F.Supp.2d 547, 556 (M.D.Pa.2012) (no deprivation of liberty as a result of a legal proceeding where plaintiffs "only recite facts pertaining to their seizure and arrest prior to the institution of a legal proceeding.").

[74] In certain circumstances, allegations of excessive force may give rise to a Fourteenth Amendment substantive due process claim. These situations generally involve "egregious" "brutal" "offensive" and arbitrary government action which "shocks the conscience." She does not argue, and we do not interpret, her excessive force claim is a Fourteenth Amendment substantive due process claim.

[75] Officer Brown concedes there are disputed facts on this claim which must be resolved by a jury, and does not move for summary judgment on this claim.

[76] *Estate of Smith v. Marasco,* 318 F.3d 497, 515 (3d Cir.2003).

[77] *Graham v. Connor,* 490 U.S. 386, 395 n. 10 (1989); *United States v. Mendenhall,* 446 U.S. 544, 553–54 (1980).

[78] *Smith v. Mensinger,* 293 F.3d 641, 651 (3d Cir.2002) (citations omitted).

[79] *Id.* at 650–51; *see also Knox v. Doe,* 487 F. App'x 725, 728 (3d Cir.2012).

[80] *Bean v. Ridley Twp.,* No. 14–5874 2015 WL 568640, *11 (E.D.Pa. Feb. 10, 2015); *Bryant v. City of Philadelphia,* No. 10–3871 2012 WL 258399, *8 (E.D.Pa. January 27, 2012); *Sullivan v. Warminster Twp.,* 765 F.Supp.2d 687, 701–02 (E.D.Pa.2011).

[81] App. 735, 848, 911.