IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD FIELDS** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO: 14-4424** |
| **CITY OF PHILADELPHIA** | : | |

| | | |
|---|---|---|
| **AMANDA GERACI** | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | **NO: 14-5264** |
| **CITY OF PHILADELPHIA** | : | |

## ORDER

AND NOW, this 6th day of October 2017, upon considering the Defendant's Motion for Summary Judgment (ECF Doc. No. 65), Plaintiff's Response (ECF Doc. No. 67), and Defendant's Reply (ECF Doc. No. 68), it is **ORDERED** Defendant's Motion (ECF Doc. No. 65) is **DENIED** as there are genuine disputes of material fact precluding summary judgment as a matter of law.[1]

_____
KEARNEY, J.

---

[1] Richard Fields and Amanda Geraci allege the City of Philadelphia is liable for First Amendment retaliation as a supervisory body under 42 U.S.C. § 1983 and *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978) based on a custom and practice of allowing police officers to retaliate against citizens who recorded officers carrying out official duties in

public. Mr. Fields and Ms. Geraci also argue the City is liable under *Monell* for being deliberately indifferent in failing to train, supervise, or discipline officers retaliating against citizens who recorded the officers carrying out official duties in public.

Viewing the facts in a light most favorable to them, Mr. Fields and Ms. Geraci adduce evidence they were attempting to or recording officers carrying out their official duties when an officer retaliated against them for recording. *See Bielevicz v. Dubinon*, 915 F.2d 845, 851 (3d Cir. 1990) ("As long as the causal link is not too tenuous, the question whether the municipal policy or custom proximately caused the constitutional infringement should be left to the jury.").

Mr. Fields and Ms. Geraci adduced evidence the City had actual notice officers retaliated against citizens for recording them before the City implemented a policy against retaliation. *See e.g.*, JointAppx0092-93, 0097, 0283. The City implemented its policy on September 23, 2011 through a memorandum read aloud to officers with no additional training. *See e.g.*, JointAppx0082, 0093-94. The City had notice of several incidents of alleged retaliation, including Ms. Geraci, occurring after it implemented the September 23, 2011 policy. *See* JointAppx0097 (Police Commissioner Reamsey responded directly to an incident of alleged retaliation); JointAppx0007 (Ms. Geraci); *see also* JointAppx1623-25, 1619-20, 1590-97, 1617-19, 1620-21. On November 9, 2012, the City updated its retaliation policy through Directive 145 also read aloud, possibly in part, and distributed to officers with no additional training. *See* JointAppx0105-06, 0179, 0258. After the City implemented Directive 145, it had actual notice of several incidents of alleged retaliation, including Mr. Fields's. *See e.g.* JointAppx0031, 33 (Mr. Fields), JointAppx 1622-23, JointAppx1615-16; JointAppx 1713-18; JointAppx1626 (March 13, 2013 letter from the Police Advisory Commission to Commissioner Ramsey about incidents of alleged retaliations highlighting incidents occurring after the City instituted a policy against it). In response to these incidents, including federal lawsuits filed against the officers, the City recommended and implemented an advanced training program in 2014 so officers would understand citizens had a constitutional right to record without retaliation. *See* JointAppx 0274-77, JointAppx0201-03. There is sufficient evidence the factfinder could find the City had actual notice officers did not understand citizens had a constitutional right to record them and the City had actual notice its training was insufficient based on the continued incidents of alleged retaliations occurring after the September 23, 2011 memorandum and Directive 145. *See Blythe v. Scanlan*, No. 14-7268, 2015 WL 4743786 at *4 (E.D. Pa. August 11, 2015) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)) ("[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program").

There is a genuine dispute of material fact as to whether the City had a custom of allowing officers to retaliate against citizens for recording them because custom "may also be established by evidence of knowledge and acquiescence." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Fletcher v. O'Donnell,* 867 F.2d 791, 793 (3d Cir.1989), *cert. denied,* 492 U.S. 919 (1989)). Viewing the evidence in the light most favorable to them, Mr. Fields and Ms. Geraci adduced evidence the City knew of alleged retaliations against citizens, instituted a policy but chose not to train or discipline officers who violated the policy, then instituted a second

longer written policy but still elected not to train or discipline officers who violated the policy while City was aware its officers did not actually understand retaliating against a citizen for recording them in public violates the citizens' First Amendment rights. *See* JointAppx0092 (Policymaker acknowledging "officers did not understand the police are allowed to be taped in public" in Summer 2011); JointAppx0294 (Policymaker acknowledging in 2014 the officers were "confused" and did not understand "it's a true constitutional right because just don't see it in the typical forum of the First Amendment"). The City argues it did not have a custom of retaliation against citizens because it instituted a formal policy against retaliation to protect citizens' First Amendment rights. The factfinder will weigh the evidence and credibility to decide whether the City's policy "had substance" or the City permitted the unconstitutional custom in spite of the formal policy. *See Beck v. City of Pittsburgh*, 89 F.3d 966, 974 (3d Cir. 1996) (finding summary judgment improper where plaintiff adduced evidence "from which a reasonable jury could have found that the City's procedures are inadequate" and it is for the jury to decide whether to City's "procedures had substance").